UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-61-GWU

| | |
|---|---|
| DORIS MCDANIEL, | PLAINTIFF, |
| VS. | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT. |

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative decision of the Commissioner of Social Security, pursuant to the provisions of the Social Security Act; at issue is the denial of her applications for Supplemental Security Income (SSI) and Disabled Widow's Insurance Benefits (WIB). The case is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The plaintiff filed two types of benefit claims, as has been noted above. With respect to the plaintiff's widow's insurance benefits, the medical evidence relating to such claims filed on or after January 1, 1991, or applications pending on or after that date, are to be evaluated under the same standards as are applied to other Title II disability claims. Omnibus Budget Reconciliation Act (OBRA) of 1990, Pub.

1

08-61  Doris McDaniel

L. No. 101-508, § 5103.  Accordingly, a review of the principles applicable to judicial review of these other claims is necessary.[1]

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Title II benefit cases:

1. Is the claimant currently engaged in substantial gainful activity?  If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 CFR 404.1520)c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

---

[1] Other requirements for Widow's benefits were not at issue in the present case.

>    6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).
>
>    7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work-- i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating

physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656, (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. If there is objective medical evidence of a medical condition, the court must determine if (1) objective evidence confirms the severity of the alleged pain arising from the condition, or (2) the objectively-established medical condition is of such severity that it can reasonably be expected to produce disabling pain. McCormick v. Secretary of Health and Human Services, 861 F.2d 998, 1002 (6th Cir. 1988).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-one work experience is considered to have had no

work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small

articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P. Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

08-61  Doris McDaniel

## DISCUSSION

The plaintiff, Doris McDaniel, was found by an Administrative Law Judge (ALJ) to have "severe" impairments described as discogenic and degenerative disorders of the back, a generalized anxiety disorder, and "malingering."  (Tr. 30). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. McDaniel retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 31-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 50, tenth grade education, and work experience as an office cleaner could perform any jobs if she had a "seriously limited but not precluded" ability to deal with coworkers and work stresses and a "limited but satisfactory" ability to follow work rules, use judgment, and understand, remember, and carry out simple one- or two-step instructions.  (Tr. 353-4).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 354).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

08-61 Doris McDaniel

Although the plaintiff alleged disability due to nerves, she also cited several physical problems including a heart murmur, high blood pressure, a possible heart attack in the past, and back pain, which prevented her from standing. (Tr. 73). At the administrative hearing, she testified she was on medications for hypertension, but it did not keep her blood pressure completely down. (Tr. 341). Her heart bothered her by racing at times. (Id.). She felt she could not lift over ten pounds because of her back, sit for 30 or 45 minutes, or stand for 15 or 20 minutes. (Tr. 345-6). She alleged having a poor grip and dropping items, but said she had always been that way. (Tr. 346).

Although medical evidence in the transcript shows some treatment for back and flank pain and there are some objective findings to support complaints of back pain, such as midline lumbar pain and tenderness on examination (e.g., Tr. 147, 176, 287), there were said to be no focal or neurological deficits. An x-ray of the lumbosacral spine in October, 2005 showed "subtle" multilevel degenerative disc disease. (Tr. 259). An MRI of the lumbosacral spine showed arthritic changes, but normal discs. (Tr. 289). However, no treating or examining source placed any physical restrictions on Mrs. McDaniel due to physical problems, and a state agency reviewing physician concluded that she did not have a "severe" physical impairment. (Tr. 246). Therefore, the ALJ's conclusion that there would be no applicable restrictions related to physical problems is supported by substantial evidence.

08-61  Doris McDaniel

The plaintiff's primary argument on appeal is that the ALJ improperly rejected functional restrictions given by her treating psychiatrist, Dr. Vassili V. Arkadiev. Dr. Arkadiev examined the plaintiff on numerous occasions, beginning in July, 2005. His initial diagnoses included a major depressive disorder with psychotic features, pseudo-dementia, rule out borderline intellectual functioning, and a histrionic personality disorder. (Tr. 283). He initially assigned a Global Assessment of Functioning (GAF) score of 40 to 48. (Id.). A GAF score in this range would reflect, at a minimum, serious impairment. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. He prescribed medication and counseling, and continued his diagnoses essentially unchanged. (Tr. 266-78). Dr. Arkadiev completed a medical source statement on January 28, 2006 indicating by checkmarks that the plaintiff would have limitations ranging from "seriously limited but not precluded" to "no useful ability" to function in all areas of occupational adjustment, including following work rules, relating to coworkers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, and maintaining attention and concentration. (Tr. 284).

The ALJ rejected the treating psychiatrist's restrictions because they were inconsistent with other evidence. Specifically, he noted that Mrs. McDaniel related extensive activities to a counselor who was treating her at the same time as Dr. Arkadiev. The counselor recorded activities including going to a flea market every

08-61 Doris McDaniel

day for four hours with a friend, and attending church on a regular basis, and that she was enjoying working in her flowers and walking her dog. (Tr. 29, 265, 275.) The ALJ felt that these activities were inconsistent with an inability to deal with the public and function independently. In addition, the ALJ relied on a consultative examination by Dr. Kevin Eggerman conducted in April, 2005. Mrs. McDaniel asserted that she avoided social activities because they made her nervous, but inconsistently reported activities such as taking her dog for a walk, going to the store (usually with her daughter), going to flea markets with friends and enjoying her interactions with them, and attending church on Tuesdays and Sundays, although she stated that she avoided social activities there. (Tr. 186-7). Dr. Eggerman asserted that the plaintiff's level of cooperation was poor and felt that she was intentionally malingering. (Tr. 187). He described her as histrionic and as embellishing her symptoms. (Tr. 188). He did diagnose a generalized anxiety disorder in addition to malingering, and concluded that Mrs. McDaniel would be "mildly to moderately" limited in her ability to understand, remember, and carry out detailed instructions, interact appropriately with the public, supervisors, and coworkers, and respond appropriately to work pressures in a usual work setting. She would not be more than "mildly" limited in any other area. (Tr. 189).

08-61  Doris McDaniel

State agency psychologists, who reviewed Dr. Eggerman's report but not Dr. Arkadiev's conclusions, concluded that the plaintiff would be no more than moderately limited in any area.  (Tr. 238-40, 242-4).

While the opinion of a treating physician is entitled to deference, it must be supported by adequate signs, symptoms, and laboratory findings, and not inconsistent with other medical findings, if it is to be given controlling weight.  <u>Bass v. McMahon</u>, 499 F.3d 506, 510 (6th Cir. 2007).  The ALJ is required to "give good reasons" for rejecting the opinion of a treating source.  <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541 (6th Cir. 2004).  In the present case, the plaintiff's own descriptions of her daily activities, both to Dr. Eggerman and to the counselor who was working with Dr. Arkadiev, detract significantly from the bleak picture of her capacity given by the treating source.

Even if this were not the case, the plaintiff has an almost insuperable difficulty in that her representative presented Dr. Arkadiev's restrictions to the VE at the administrative hearing.  The VE responded that if the somewhat ambiguous checkmarks were interpreted as showing a "seriously limited but not precluded" ability in the areas listed, it would not preclude the unskilled jobs that she had cited.  (Tr. 356-7).  The VE did concede that if the checkmarks were interpreted as being consistent with "no useful ability" to function, all work would be eliminated.  (Tr. 356).  However, a review of the form completed by the psychiatrist shows that he

08-61  Doris McDaniel

clearly checked "no useful ability" in only one area, dealing with the public. (Tr. 284). The other checkmarks were either under the "seriously limited but not precluded" column or somewhere in between. (Id.). Therefore, to the extent that there was any ambiguity, the VE's testimony could have been accepted by a reasonable finder of fact as consistent with an ability to perform a significant number of jobs, even under the treating psychiatrist's opinion. The court notes that it is the plaintiff's responsibility to prove her own case, and under the present set of facts she simply did not produce evidence showing that she is clearly unable to work.

The decision will be affirmed.

This the 29th day of October, 2008.

Signed By:
*G. Wix Unthank*
United States Senior Judge